1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEITH TROUT,

          Plaintiff,

    v.

COUNTY OF MADERA, et al.,

          Defendants.

Case No.  21-cv-06061-PJH

**ORDER OF DISMISSAL FOR
IMPROPER VENUE**

Re: Dkt. Nos. 86, 89, 90-1, 92, 94

    Before the court are several motions to dismiss the complaint.  The matter is fully briefed and suitable for decision without oral argument.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DISMISSES the complaint for the following reasons.

**BACKGROUND**

    Calley Jean Garay ("Calley") was fatally shot by her estranged husband, Julio Garay, Sr. ("Julio Sr."), as she was leaving a medical appointment at Camarena Health Clinic in Madera County, California, on July 14, 2020.[1]  Plaintiff Keith Trout is the maternal grandfather and guardian ad litem of Calley's four minor children, DA, JG1, JG2, and JG3.

    Plaintiff seeks to hold 19 defendants liable for their respective roles in Calley's death and the events that followed.  Defendants are listed as follows: County of Madera;

---

[1] The Attorney General's briefing notes, "As the last name 'Garay' is shared by numerous parties related to this case, Calley and others will be referred to by their first names.  No disrespect is intended."  Dkt. 92 at 8 n.1.  The court concurs and follows the same pattern here.

Community Action Partnership of Madera County, Inc. ("CAPMC"); Martha Diaz Shelter; Camarena Health; Camarena Health Foundation; Lorena Blanco Elenez; Deborah Martinez, Director of the County of Madera Department of Social Services; Will Lightbourne, Director of the California Department of Health Care Services ("DHCS"); Kim Johnson, Director of the California Department of Social Services ("DSS"); Danny Morris, sued as an individual and as deputy director of the County of Madera Department of Social Services; Sara Bosse, sued as an individual and as the Public Health Director of the Madera County Department of Public Health; Mattie Mendez, sued as an individual and acting as the executive director of the CAPMC; Xavier Becerra, Secretary of the United States Department of Health and Human Services ("HHS"); Bronco Professional Park, LLC; Bronco Professional Park Owners Association; Rose Alvarado; Julio L. Garay, Sr. ("Julio Sr."); Julio J. Garay, Jr. ("Julio Jr."); and Amanda M. Garay.

## A.    Death of Calley

Calley was tragically murdered by her estranged spouse, Julio Sr., on July 14, 2020.  FAC ¶¶ 20, 55, 122-69.  As alleged, Calley and her children had long suffered physical abuse at the hands of Julio Sr.  See FAC ¶¶ 121-27.  She reported the abuse to the Chowchilla Police Department, which led to Julio Sr.'s arrest and charges of criminal spousal and child abuse.  FAC ¶¶ 127-29.  Calley and the children became residents of the Martha Diaz Shelter, a domestic violence shelter in Madera County owned and operated by defendant CAPMC.  FAC ¶ 128.

During their stay at the shelter, some three months after Calley separated from her husband, she planned to attend a medical appointment.  Prior to the medical appointment, defendant Lorena Blanco Elenez, an employee of defendant Camarena Health, called the telephone number Calley previously provided to remind Calley of her appointment.  FAC ¶ 135.  The number Elenez called reached Julio Sr.'s residence, and Elenez provided information regarding the time and place of Calley's upcoming appointment.  FAC ¶ 135.

1   On July 14, 2020, a staff member from the Martha Diaz Shelter drove Calley to the

2   scheduled medical appointment at Camarena Health.  FAC ¶ 154-56.  Calley's three

3   boys accompanied her to the appointment.  FAC ¶¶ 150, 154.  While Calley was

4   attending the appointment, Julio Sr. waited in the parking lot in front of Camarena Health

5   for Calley to re-emerge, having been informed of her presence by Elenez.  FAC ¶ 151.

6   After the appointment, Calley left the building, and walked to the waiting transportation

7   van with her son.  FAC ¶ 172.  Calley was in the process of putting her son inside the

8   vehicle when Julio Sr. approached them from behind and shot her several times.  FAC

9   ¶¶ 173-75.  Calley attempted to shield her sons and died from her injuries.  Julio Sr. fled

10  but was subsequently caught, tried, and convicted of her murder.  FAC ¶ 179.

11  **B.     Subsequent Abuse of Three Boys**

12  Following the death of their mother, JG1, JG2, and JG3 ("the three boys") were

13  placed in the custody of Child Welfare Services, a program of the County's Department of

14  Social Services.  FAC ¶ 184.  The three boys spent weekdays in foster care and

15  weekends with their mother's friend, Sarah Rodriguez, and her husband, Pete Rodriguez,

16  beginning in July 2020.  FAC ¶ 191.  Child Welfare Services removed the three boys from

17  foster care and placed them with Julio Garay, Jr. ("Julio Jr."), in September 2020.  FAC

18  ¶ 192.  The Rodriguezes' weekend visitations with the three boys were cut down to once

19  monthly.  FAC ¶ 193.  The Rodriguezes found the boys' behavior to become more

20  aggressive and dysregulated following their placement with Julio Jr., and the

21  Rodriguezes found bruises and signs of physical abuse on the boys.  FAC ¶¶ 194-201.

22  Plaintiff alleges that the County of Madera as well as several employees and

23  subcontractors "failed and refused to employ or allow the boys treatment care

24  examination by competent providers to provide psychotherapy and treatment for the

25  mental disorders and mental health of" the three boys.  FAC ¶ 204.

26  **C.     Transfer of Real Property**

27  During the course of their marriage, up until the separation, Julio Sr. and Calley

28  lived with their three boys at 1101 Sonoma Avenue in Chowchilla, which is situated in

United States District Court
Northern District of California

1   Madera County.  FAC ¶ 63.  Plaintiff alleges that Julio Sr. and Calley had been the true

2   owners of the property since 1998, though title was recorded in the name of Julio Sr.'s

3   mother as a strawman to hide the residence from his creditors.  FAC ¶ 216.  Julio Sr.'s

4   mother, Alvarado, never collected rent nor held any beneficial interest in the property,

5   and Julio Sr. at all times occupied and paid the incidents of ownership, including taxes,

6   insurance, and maintenance.  FAC ¶¶ 216-18.

7       On or about the date of the shooting, July 14, 2020, Julio Sr. directed Alvarado to

8   deed the property to his daughter, Amanda, and he rushed the filing of a transfer deed to

9   be recorded in the Office of the County Recorder of Madera County.  FAC ¶ 220.  No

10  consideration was paid for the transfer.  FAC ¶ 221-22.  Plaintiff alleges that Julio Sr.,

11  Alvarado, and Amanda together conspired to hide the property and to hinder creditors.

12  FAC ¶ 228-31.  Plaintiff alleges the transfer of the property was fraudulent.  FAC ¶ 232.

13  Julio Sr.'s creditors include the minors based on (1) the community property and family

14  support to which Calley would have been entitled following the separation as well as

15  (2) the damages owed to the minors as heirs and survivors.  FAC ¶¶ 210-11.

16  **D.    Procedural History**

17      Plaintiff, a resident of North Dakota, filed the original complaint initiating this

18  lawsuit on August 6, 2021.  Dkt. 1.  The parties stipulated to a briefing schedule for

19  defendants' responsive pleadings.  Dkt. 46.  Defendants submitted various motions

20  seeking dismissal and/or transfer of venue, and plaintiff filed the first amended complaint

21  ("FAC") in response.  Dkt. 71.

22      The FAC includes several causes of action that are not clearly enumerated.  In

23  general, plaintiff's claims fall within the following theories of liability: (1) constitutional

24  violations, (2) negligence and gross negligence, (3) wrongful death, (4) violation of

25  privacy, (5) survivorship, and (6) fraudulent conveyance.

26      The parties again stipulated to a briefing schedule for defendants' motions

27  challenging the complaint.  Dkt. 78.  The court accepted the stipulation, noting that any

28  hearing would take place after April 11, 2022.  Dkt. 80.

4

1    This order focuses on the motions to dismiss for improper venue brought under

2    Rule 12(b)(3) at Dkt. 86 (County et al.); Dkt. 89 at Headnote III (CAPMC et al.); Dkt. 90-1

3    at Headnote III.C. (Bronco); Dkt. 92 at Headnote I (Johnson); and Dkt. 98 (Becerra); as

4    well as Baass' related motion at Dkt. 94 contesting service of process.  The Rule 12(b)(3)

5    motions alternatively seek dismissal or transfer to the Eastern District.  The order does

6    not reach defendants' motions for discretionary transfer under Title 28 U.S.C. § 1404(a),

7    nor does it reach the several motions to dismiss brought under Rules 12(b)(1) or 12(b)(6).

8                                                   **DISCUSSION**

9    Though the majority of defendants reside in Madera County and most of the

10   actions giving rise to plaintiff's claims took place within the geographic boundaries of the

11   Eastern District of California, Trout initiated this lawsuit in this district on a theory that one

12   defendant resides here.  Whether that single defendant was properly served is a matter

13   of dispute, and the court considers it as a threshold issue before addressing whether this

14   case must be dismissed for improper venue.

15   **A.    Insufficient Service of Process**

16   Plaintiff delivered process to now-former Director of DHCS, William Lightbourne, at

17   his home in Santa Cruz County, California, on September 16, 2021.  Dkt. 32.  The current

18   Director of DHCS, Michelle Baass, avers that service was invalid to bring her office into

19   the case.  Though service on a state agency can be accomplished by delivering a copy of

20   the summons and complaint to the chief executive officer or other head of the entity

21   under California law, Baass attests that Lightbourne was no longer the head of DHCS on

22   the day of plaintiff's purported delivery.  Plaintiff disagrees that Lightbourne was no longer

23   head of the agency at the time he was served, and he additionally argues that service on

24   Lightbourne was effective because he still had "ostensible authority" to accept service on

25   behalf of the agency.

26   **1.    Legal Standard**

27   Federal Rule of Civil Procedure 12(b)(5) permits a motion to dismiss to be brought

28   for insufficient service of process.  A federal court lacks personal jurisdiction over a

defendant if service of process is insufficient.  See Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."  Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).  If the plaintiff is unable to satisfy this burden, the court has the discretion to either dismiss the action or retain the action and quash the service of process.  See Stevens v. Sec. Pac. Nat'l Bank, 538 F.2d 1387, 1389 (9th Cir. 1976).  "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion."  Cotti v. City of San Jose, No. 18-cv-02980-BLF, 2019 WL 2579206, at *5 (N.D. Cal. June 24, 2019) (citation omitted).  A plaintiff must serve a summons and a copy of the complaint in the manner and within the time prescribed.  Fed. R. Civ. P. 4(c)(1).  "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

### 2.    Service of a State Official

Federal rules permit service of process on a state (or its officers in their official capacity) in conformity with forum-state procedures.  Fed. R. Civ. Proc. 4(j)(2).  California Code of Civil Procedure section 416.50 provides that a public agency may be served by delivering a copy of the summons and complaint to the agency's presiding officer.  A gubernatorial appointment of an agency official is effective even before the appointment is confirmed by the State Senate.  Cal. Gov't. Code § 1774.

Review of the timeline is relevant here.  Plaintiff initiated this lawsuit on August 6, 2021, naming Director Lightbourne as a defendant in his official capacity.  Dkt. 1.  Governor Newsom announced the appointment of Baass as the new Director of the agency on September 10, 2021.  Baass Decl. ¶ 2 (Dkt. 94-1 at 2).  Lightbourne's last day at DHCS was September 14, 2021, and Baass assumed all Director responsibilities on September 15, 2021.  Baass Decl. ¶¶ 3, 4 (Dkt. 94-1 at 2).  The day after Baass officially took over the job, September 16, 2021, plaintiff delivered process to Lightbourne at his home address in Santa Cruz County.  Dkt. 32.  Lightbourne was no longer Director of the

1   agency and did not have actual authority to accept service on behalf of the agency at the

2   time he was served with process.  Though plaintiff argues that Baass did not actually

3   start her position until after September 15, 2021, he ignores the publicly announced

4   effective date of her appointment and the statutorily determined conclusion that she

5   ascended to the role on that date.  Therefore, as a matter of law, plaintiff's delivery of

6   process to Lightbourne was not effective to serve the Director of DHCS—he instead

7   served a recently-retired civilian.

8          Plaintiff cites to a declaration filed in <u>Pharmacists Association, et al. v. Michelle

9   Baass</u>, 4:19-cv-02999-JSW, another case in this district, in which Baass was substituted

10  for Lightbourne as Director of DHCS.  That declaration stated that Baass' start date as

11  Director was September 21, 2021, and plaintiff argues that she is judicially estopped from

12  taking the different position she asserts here related to her start date.  However, plaintiff's

13  argument falls well short of precluding Baass' declaration in this case because (1) a

14  notice of errata has since been filed in the <u>Pharmacists Association</u> case correcting the

15  start date noted therein (<u>see</u> Case No. 4:19-cv-02999-JSW, Dkt. 112), and (2) plaintiff

16  does not identify any of the factors necessary to trigger exclusion of Baass' position

17  based on judicial estoppel (<u>see</u> <u>Ah Quin v. Cty. of Kauai Dep't of Transp.</u>, 733 F.3d 267,

18  270 (9th Cir. 2013)).  In sum, plaintiff's September 16, 2021, delivery of papers to

19  Lightbourne's residence was not effective service of process on the Director of DHCS.

20         **3.     Ostensible Authority**

21         "Ostensible authority is such as a principal, intentionally or by want of ordinary

22  care, causes or allows a third person to believe the agent to possess."  Cal. Civ. Code

23  § 2317.  A plaintiff can only establish ostensible authority by satisfying three "essential

24  elements": a "[1] representation by the principal, [2] justifiable reliance thereon by a third

25  person, and [3] change of position or injury resulting from such reliance."  <u>Yanchor v.

26  Kagan</u>, 22 Cal.App.3d 544, 549 (1971); <u>see also</u> <u>Brockmeyer v. May</u>, 383 F.3d 798, 801

27  (9th Cir. 2004) (noting that it is the plaintiff's burden to establish proper service).  When

28  the third party relies on an agent's ostensible authority in good faith and without want of

United States District Court
Northern District of California

7

1   ordinary care, the principal is bound by the acts of its agent.  Cal. Civ. Code § 2334.

2          Plaintiff argues that Lightbourne continued to hold ostensible authority to accept

3   service on behalf of DHCS based on a few representations.  First, DHCS continued to

4   issue form publications with Lightbourne's name listed as the Director on letterhead until

5   October 25, 2021.  Thimesch Decl., Ex. 3 (Dkt. 105-4).  Second, the "About the Director"

6   page on the DHCS website continued to display Lightbourne's photo and biography until

7   at least September 30, 2021.  Thimesch Decl. ¶¶ 11-12 (Dkt. 105-1 at 3).  Plaintiff's

8   counsel notes, however, that Baass' name replaces Lightbourne's as Director at certain

9   places on the DHCS website on September 16, 2021.  Thimesch Decl. ¶ 11 (Dkt. 105-1

10  at 3).  Finally, plaintiff's counsel notes that the Attorney General's office, counsel for

11  Baass and another defendant, did not challenge service on Lightbourne for some 51 days

12  following service despite regular exchanges between counsel acknowledging service.

13  Thimesch Decl., Ex. 4 (Dkt. 105-3).

14          Here, plaintiff's references are less than compelling to establish that DHCS

15  represented that Lightbourne was still its Director and to justify plaintiff's service on him.

16  The first reference, the forms that DHCS continued to distribute with Lightbourne's name

17  on the letterhead, were clearly not directives issued on Lightbourne's behalf.  Plaintiff

18  draws too much from these informational notices—they are not signed by Lightbourne,

19  they do not suggest that Lightbourne directed their distribution, and it is reasonable to

20  infer that his name is only left in the header as a result of inherent administrative delays

21  in bureaucratic transitions.  Regarding the second reference, plaintiff also places too

22  much stock in the "About the Director" biography page of the DHCS website.  Plaintiff's

23  counsel acknowledges that Lightbourne's name was replaced with Baass' at some points

24  on the website beginning at least on September 16, the date of service, even though

25  Lightbourne's biography was not replaced with hers until September 21.  Thimesch Decl.

26  ¶¶ 11-12.  The inconsistency of the names on the website beginning at least on the date

27  of service weakens plaintiff's inference that the website represented Lightbourne was still

28  Director.  The agency's Twitter announcement of the transition on September 15

8

United States District Court
Northern District of California

1   additionally weakens plaintiff's reference.  See Dkt. 94-1 at 2.  And, as with the

2   letterhead, the delay in posting Baass' biography is easily accepted as a result of

3   inherent administrative delays in bureaucratic transitions.  These two references fall short

4   of the first two elements necessary to support ostensible authority.  DHCS did not

5   represent that Lightbourne was still Director through either of these references, and given

6   the announcements that a new Director had been introduced, reliance on these

7   weakened representations to establish that Lightbourne still had authority was not

8   justified.

9         For the third reference, counsel from the Attorney General's office states to

10  plaintiff's counsel, "I understand that you recently served the head of DHCS.  I represent

11  his office.  Please agree to grant DHCS the same extension granted to DSS for purposes

12  of responding to the complaint."  Thimesch Decl., Ex. 2 (Dkt. 105-3 at 2).  The gendered

13  reference to the Director as well as the acknowledgement that he had already been

14  served may support an inference that Lightbourne had authority to accept service.

15  Though this representation is not from the agency or Lightbourne himself, it is a

16  communication from counsel that may be accepted as a representation from the principal

17  and reasonably relied upon.  However, even if the court accepted these points, plaintiff's

18  argument falls short on the third element of the ostensible authority assessment.  Plaintiff

19  does not show a change in position based on counsel's after-the-fact comments—

20  delivery of process to Lightbourne had already been completed and he took no steps

21  differently based on a representation from the DHCS Director or counsel.  Plaintiff's

22  argument regarding ostensible authority falls short because the representation of counsel

23  took place after plaintiff's delivery of process to Lightbourne.

24        In sum, Baass establishes that Lightbourne did not have actual authority to accept

25  service of process on behalf of the agency on September 16, 2021.  The court finds that

26  Lightbourne did not have ostensible authority to accept service of process on behalf of

27  the agency on that date either.  There was no service effective to give this court

28  jurisdiction over the office of the Director of DHCS, and the agency must be dismissed.

**B.**     **Improper Venue**

　　　**1.**     **Legal Standard**

　　　　"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  When a defendant files a Rule 12(b)(3) motion to dismiss for improper venue, the burden shifts to the plaintiff to establish that venue is proper.  See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).  "Analysis under Rule 12(b)(3) . . . permits the district court to consider facts outside of the pleadings."  Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996), overruled on other grounds, Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 571 U.S. 49 (2013).

　　　　"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).  If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)."  Atl. Marine Constr. Co., 571 U.S. at 56.  First, the plaintiff may bring suit in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Second, the plaintiff may bring suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  Third, if there is not a proper district under the first two provisions, the plaintiff may bring the suit in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).  Residency is determined under Title 28 U.S.C. § 1391(c).

　　　　Venue is also proper in actions where the defendant is an officer or employee of the United States "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).

10

United States District Court
Northern District of California

1

2    **2.     Analysis**

3        Plaintiff makes clear in his opposition brief that he relies on only one of the three

4    primary grounds for venue, that expressed in Title 28 U.S.C. § 1391(b)(1).  Plaintiff

5    contends that all defendants reside in California, and therefore, venue is proper here in

6    the Northern District based on the personal residence of former DHCS Director

7    Lightbourne in Santa Cruz County.  Plaintiff also argues that HHS funding to Madera

8    County flows through Regional Office 9 in San Francisco, which is also located in this

9    judicial district.  Plaintiff suggests without cite that Secretary Becerra, though named in

10   his official capacity, is a lifelong resident of California.  All of plaintiff's contentions lack

     merit.

11               **a.     Residences of DHCS Director and HHS Secretary**

12       A state officer sued in his official capacity is not a natural person within the

13   meaning of section 1391(c).  Umphress v. Hall, 479 F. Supp. 3d 344, 349 (N.D. Tex. Aug.

14   14, 2020) ("the key difference between a 'natural person' and a state official sued solely

15   in his official capacity is that a lawsuit involving an official-capacity defendant follows the

16   office and not the natural person.").  "Obviously, state officials literally are persons. But a

17   suit against a state official in his or her official capacity is not a suit against the official but

18   rather is a suit against the official's office."  Will v. Michigan Dep't of State Police, 491

19   U.S. 58, 71 (1989).  If an official-capacity defendant ceases to hold office, the successor

20   official is substituted as a party defendant, so a venue determination based on a current

21   or past government official's personal residence is improper.  See Karcher v. May, 484

22   U.S. 72, 77 (1987) (affirming that "the public officer's successor is automatically

23   substituted as a party"); Fed. R. Civ. P. 25(d) ("An action does not abate when a public

24   officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold

25   office while the action is pending.  The officer's successor is automatically substituted as

26   a party.")

27       For purposes of venue, official-capacity residence is determined under section

28   1391(c)(2), which applies to entities.  Umphress, 479 F. Supp. 3d at 350; see 28 U.S.C.

United States District Court
Northern District of California

§ 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction").  Federal officers are considered to reside where the officers perform their official duties.  See Reuben H. Donnelley Corp. v. F.T.C., 580 F.2d 264, 266 n.3 (7th Cir. 1978) ("The residence of a federal officer has always been determined by the place where he performs his official duties.") (citations omitted).  Furthermore, the mere presence of a regional agency office in a judicial district does not create residency in the district for the purpose of venue analysis.  Id. at 267.  Treating official-capacity defendants as representative of their office or state under section 1391(c)(2) fits with "the general rule" that "if a suit is brought against a state official in his official capacity, the official's residence is where he performs his official duties."  See Missouri Electric Cooperatives v. Missouri, 229 F.Supp.3d 888, 891 (E.D. Mo. 2017); see also Venue Based on Residence, Rutter Group, Fed. Civ. Pro. Before Trial Ch. 4-C(f) (citing Berry v. New York Dept. Corr. Servs., 808 F. Supp. 1106, 1108 (S.D.N.Y. 1992)).  An official-capacity suit is, in essence, a suit against the agency whose residency for purposes of venue is fixed by the location of its headquarters and offices.

Plaintiff's reliance on the out-of-circuit case Navajo Health Foundation v. Burwell, 86 F. Supp. 3d 1211 (D.N.M. 2015), for the proposition that the personal residence of the head of a federal agency might ever be relevant for purposes of venue in an official capacity suit, is misplaced.  The holding in Navajo Health Foundation (1) ignores the fact that in an official capacity suit a federal official is not sued as a "natural person"; (2) has been criticized as wrongly decided, see Umphress, 479 F. Supp. 3d at 350-51; and (3) in any event conflicts with the consistent line of cases in this Circuit, including cases decided after Congress amended § 1391 in 2012, holding that federal defendants sued in their official capacity reside at the agency's official residence, where the official duties are performed.  See, e.g., Tsi Akim Maidu of Taylorsville Rancheria v. United States, No. 16-cv-07189-LB, 2017 WL 2289203, at *2 (N.D. Cal. May 25, 2017); Al Hada v. Pompeo, No. 18-cv-8002, 2018 WL 6264999, at *2 (C.D. Cal. Sept. 17, 2018); J.P. v. Sessions,

No. 18-cv-06081-JAK, 2019 WL 6723686, at *43 (C.D. Cal. Nov. 5, 2019).

Plaintiff sued former DHCS Director Lightbourne exclusively in his official capacity. FAC ¶ 32; Dkt. 108 at 1-2. Plaintiff creatively argues that Lightbourne performed his official duties from his Santa Cruz County residence because he worked from home during the COVID-19 pandemic. FAC ¶ 9. Plaintiff fails, however, to offer any authority for this unique position that contradicts prior authority emphasizing that official-capacity residence is established where an officer officially performs his or her duties. Because DHCS offices—including those of the agency's director—are located in Sacramento County, within the Eastern District of California, that is where DHCS (and its officers sued in their official capacity) resides for purposes of § 1391(c)(2). On this basis, the court concludes that venue in this district is improper because no defendant resides here. See 28 U.S.C. § 1391(b)(1). This assessment is only further bolstered by the court's determination above that service on Lightbourne was ineffective. Without service on Lightbourne at his personal residence in Santa Cruz County, there remains little argument that any defendant resides in the Northern District.

Plaintiff similarly sues HHS Secretary Becerra exclusively in his official capacity. FAC ¶ 32. Plaintiff reasons that federal officers may hold "dual residency" for purposes of venue, citing to a case brought against a Pentagon-based Air Force officer. Dehaemers v. Wynne, 522 F. Supp. 2d 240, 248 (D.D.C. 2007). However, the residency inquiry in Dehaemers focused only on the location where the officer performed his official duties—either in Washington, D.C., or Arlington, Virginia, the location of the Pentagon— the inquiry did not propose that an officer's residency can be based on their personal residences for an official-capacity suit. Id. at 248. Plaintiff suggests without cite that Becerra maintains a personal residence in California, but even so, plaintiff misses the mark. There is no support for the premise that Becerra performs official duties in California. Because HHS offices—including those of the Secretary—are located within the District of Columbia, that is where HHS (and its officers sued in their official capacity) resides for purposes of § 1391(c)(2). See Reuben H. Donnelley Corp., 580 F.2d at

13

1  266 n.3.  The presence of a regional office in San Francisco does not change the venue

2  analysis because a regional office does not create residency.  On this basis as well, the

3  court concludes that venue in this district is improper because not all defendants reside in

4  California.  See 28 U.S.C. § 1391(b)(1).

5          **b.**        **Section 1391(e)**

6        Special provisions govern venue in civil actions in which the United States is a

7  defendant.  The federal-entity venue provision provides in relevant part:

> A civil action in which a defendant is an officer or employee of
> the United States or any agency therefor acting in his official
> capacity . . . or an agency of the United States, or the United
> States, may, except as otherwise provided by law, be brought
> in any judicial district in which (A) a defendant in the action
> resides, (B) a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that
> is the subject of the action is situated, or (C) the plaintiff resides
> if no real property is involved in the action.

13  28 U.S.C. § 1391(e)(1).

14        Here, plaintiff brings claims against a federal defendant, Secretary Beccera, in his

15  official role as the head of HHS.  FAC ¶ 32.  Apart from HHS, the other defendants are all

16  located in either Madera County or Sacramento County.  Both Counties are located

17  within the boundaries of the Eastern District of California.  As a result, the Northern

18  District of California is not a proper venue for this lawsuit under § 1391(e)(1)(A) because

19  no defendant resides here.

20        Similarly, there are no factual allegations that indicate that "a substantial part of

21  the events or omissions giving rise to the claim occurred" in this judicial district, so

22  § 1391(e)(1)(B) is also not a basis for proper venue in this court.  All three of the main

23  events giving rise to plaintiff's claims took place in Madera County, including (1) the

24  shooting of Calley, (2) the abuse of the three sons, and (3) the fraudulent transfer of the

25  Chowchilla property.  The events that gave rise to this action occurred within Eastern

26  District of California, and this court thus finds that the appropriate venue for this action

27  lies there.  28 U.S.C. § 1391(e)(1)(B).  Though the FAC alleges that some actions

28  occurred here, namely, failures of the federal HHS to supervise the state and local

United States District Court
Northern District of California

1   officials occurred in the San Francisco Region 9 office, at the Office of Civil Rights (FAC

2   ¶ 10), the allegations lack any specific connection to that office (see Leoz Decl. ¶¶ 3-4

3   (Dkt. 98-1 at 2)).  The FAC does not meet the necessary showing that a "substantial part

4   of the events or omissions occurred" in this district.

5          Lastly, neither plaintiff nor any of the minors he represents reside in this district

6   (see FAC ¶ 11(a)-(c)), and plaintiff brings a claim for fraudulent conveyance involving the

7   real property held by some of the defendants in Chowchilla, California, which is also in

8   the Eastern District.  These considerations prevent venue in this district under

9   § 1391(e)(1)(C).  Therefore, the special venue rules triggered by the inclusion of a federal

10  defendant additionally preclude venue in this district.

**CONCLUSION**

12         For the reasons stated above, including that service on Lightbourne was improper,

13  that no defendant resides in this judicial district, and that venue is ultimately improper in

14  this district, the court DISMISSES the operative complaint.  Dismissal is without prejudice

15  to filing in the proper district court.  The court TERMINATES without reaching the various

16  other motions challenging the pleading, though several appear meritorious.  Plaintiff

17  should take the opportunity before re-filing to assess whether this plethora of claims and

18  defendants are properly joined.

19         **IT IS SO ORDERED.**

20  Dated: May 6, 2022

21                                          */s/ Phyllis J. Hamilton*
                                            PHYLLIS J. HAMILTON
22                                          United States District Judge