United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEITH TROUT,

            Plaintiff,

    v.

COUNTY OF MADERA, et al.,

            Defendants.

Case No.  21-cv-06061-PJH

**AMENDED ORDER OF DISMISSAL FOR IMPROPER VENUE**

Re: Dkt. Nos. 86, 89, 90-1, 92, 94

Before the court are several motions to dismiss the complaint.  The matter is fully briefed and suitable for decision without oral argument.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DISMISSES the complaint for the following reasons.

**BACKGROUND**

Calley Jean Garay ("Calley") was fatally shot by her estranged husband, Julio Garay, Sr. ("Julio Sr."), as she was leaving a medical appointment at Camarena Health Clinic in Madera County, California, on July 14, 2020.[1]  Plaintiff Keith Trout is the maternal grandfather and guardian ad litem of Calley's four minor children, DA, JG1, JG2, and JG3.

Plaintiff seeks to hold 19 defendants liable for their respective roles in Calley's death and the events that followed.  Defendants are listed as follows: County of Madera;

---

[1] The Attorney General's briefing notes, "As the last name 'Garay' is shared by numerous parties related to this case, Calley and others will be referred to by their first names.  No disrespect is intended."  Dkt. 92 at 8 n.1.  The court concurs and follows the same pattern here.

United States District Court
Northern District of California

1   Community Action Partnership of Madera County, Inc. ("CAPMC"); Martha Diaz Shelter;

2   Camarena Health; Camarena Health Foundation; Lorena Blanco Elenez; Deborah

3   Martinez, Director of the County of Madera Department of Social Services; Will

4   Lightbourne, Director of the California Department of Health Care Services ("DHCS");

5   Kim Johnson, Director of the California Department of Social Services ("DSS"); Danny

6   Morris, sued as an individual and as deputy director of the County of Madera Department

7   of Social Services; Sara Bosse, sued as an individual and as the Public Health Director of

8   the Madera County Department of Public Health; Mattie Mendez, sued as an individual

9   and acting as the executive director of the CAPMC; Xavier Becerra, Secretary of the

10  United States Department of Health and Human Services ("HHS"); Bronco Professional

11  Park, LLC; Bronco Professional Park Owners Association; Rose Alvarado; Julio L. Garay,

12  Sr. ("Julio Sr."); Julio J. Garay, Jr. ("Julio Jr."); and Amanda M. Garay.

13  **A.   Death of Calley**

14          Calley was tragically murdered by her estranged spouse, Julio Sr., on July 14,

15  2020.  FAC ¶¶ 20, 55, 122-69.  As alleged, Calley and her children had long suffered

16  physical abuse at the hands of Julio Sr.  See FAC ¶¶ 121-27.  She reported the abuse to

17  the Chowchilla Police Department, which led to Julio Sr.'s arrest and charges of criminal

18  spousal and child abuse.  FAC ¶¶ 127-29.  Calley and the children became residents of

19  the Martha Diaz Shelter, a domestic violence shelter in Madera County owned and

20  operated by defendant CAPMC.  FAC ¶ 128.

21          During their stay at the shelter, some three months after Calley separated from

22  her husband, she planned to attend a medical appointment.  Prior to the medical

23  appointment, defendant Lorena Blanco Elenez, an employee of defendant Camarena

24  Health, contacted Julio, Sr.'s residence and told him or other defendants about Calley's

25  appointment.[2]  FAC ¶ 135.  The number Elenez called reached Julio Sr.'s residence, and

26

27          _____

28  [2] This sentence has been amended by the court to avoid a misstatement of fact.  See Dkt. 142.  The text of this amended order is otherwise unchanged, though the subsequent page and line numbers are not exactly the same.

1   Elenez provided information regarding the time and place of Calley's upcoming

2   appointment.  FAC ¶ 135.

3          On July 14, 2020, a staff member from the Martha Diaz Shelter drove Calley to the

4   scheduled medical appointment at Camarena Health.  FAC ¶ 154-56.  Calley's three

5   boys accompanied her to the appointment.  FAC ¶¶ 150, 154.  While Calley was

6   attending the appointment, Julio Sr. waited in the parking lot in front of Camarena Health

7   for Calley to re-emerge, having been informed of her presence by Elenez.  FAC ¶ 151.

8   After the appointment, Calley left the building, and walked to the waiting transportation

9   van with her son.  FAC ¶ 172.  Calley was in the process of putting her son inside the

10  vehicle when Julio Sr. approached them from behind and shot her several times.  FAC

11  ¶¶ 173-75.  Calley attempted to shield her sons and died from her injuries.  Julio Sr. fled

12  but was subsequently caught, tried, and convicted of her murder.  FAC ¶ 179.

13  **B.     Subsequent Abuse of Three Boys**

14         Following the death of their mother, JG1, JG2, and JG3 ("the three boys") were

15  placed in the custody of Child Welfare Services, a program of the County's Department of

16  Social Services.  FAC ¶ 184.  The three boys spent weekdays in foster care and

17  weekends with their mother's friend, Sarah Rodriguez, and her husband, Pete Rodriguez,

18  beginning in July 2020.  FAC ¶ 191.  Child Welfare Services removed the three boys from

19  foster care and placed them with Julio Garay, Jr. ("Julio Jr."), in September 2020.  FAC

20  ¶ 192.  The Rodriguezes' weekend visitations with the three boys were cut down to once

21  monthly.  FAC ¶ 193.  The Rodriguezes found the boys' behavior to become more

22  aggressive and dysregulated following their placement with Julio Jr., and the

23  Rodriguezes found bruises and signs of physical abuse on the boys.  FAC ¶¶ 194-201.

24  Plaintiff alleges that the County of Madera as well as several employees and

25  subcontractors "failed and refused to employ or allow the boys treatment care

26  examination by competent providers to provide psychotherapy and treatment for the

27  mental disorders and mental health of" the three boys.  FAC ¶ 204.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**C.     Transfer of Real Property**

2

During the course of their marriage, up until the separation, Julio Sr. and Calley

3

lived with their three boys at 1101 Sonoma Avenue in Chowchilla, which is situated in

4

Madera County.  FAC ¶ 63.  Plaintiff alleges that Julio Sr. and Calley had been the true

5

owners of the property since 1998, though title was recorded in the name of Julio Sr.'s

6

mother as a strawman to hide the residence from his creditors.  FAC ¶ 216.  Julio Sr.'s

7

mother, Alvarado, never collected rent nor held any beneficial interest in the property,

8

and Julio Sr. at all times occupied and paid the incidents of ownership, including taxes,

9

insurance, and maintenance.  FAC ¶¶ 216-18.

10

On or about the date of the shooting, July 14, 2020, Julio Sr. directed Alvarado to

11

deed the property to his daughter, Amanda, and he rushed the filing of a transfer deed to

12

be recorded in the Office of the County Recorder of Madera County.  FAC ¶ 220.  No

13

consideration was paid for the transfer.  FAC ¶ 221-22.  Plaintiff alleges that Julio Sr.,

14

Alvarado, and Amanda together conspired to hide the property and to hinder creditors.

15

FAC ¶ 228-31.  Plaintiff alleges the transfer of the property was fraudulent.  FAC ¶ 232.

16

Julio Sr.'s creditors include the minors based on (1) the community property and family

17

support to which Calley would have been entitled following the separation as well as

18

(2) the damages owed to the minors as heirs and survivors.  FAC ¶¶ 210-11.

19

**D.     Procedural History**

20

Plaintiff, a resident of North Dakota, filed the original complaint initiating this

21

lawsuit on August 6, 2021.  Dkt. 1.  The parties stipulated to a briefing schedule for

22

defendants' responsive pleadings.  Dkt. 46.  Defendants submitted various motions

23

seeking dismissal and/or transfer of venue, and plaintiff filed the first amended complaint

24

("FAC") in response.  Dkt. 71.

25

The FAC includes several causes of action that are not clearly enumerated.  In

26

general, plaintiff's claims fall within the following theories of liability: (1) constitutional

27

violations, (2) negligence and gross negligence, (3) wrongful death, (4) violation of

28

privacy, (5) survivorship, and (6) fraudulent conveyance.

4

1

2       The parties again stipulated to a briefing schedule for defendants' motions

3   challenging the complaint.  Dkt. 78.  The court accepted the stipulation, noting that any

    hearing would take place after April 11, 2022.  Dkt. 80.

4       This order focuses on the motions to dismiss for improper venue brought under

5   Rule 12(b)(3) at Dkt. 86 (County et al.); Dkt. 89 at Headnote III (CAPMC et al.); Dkt. 90-1

6   at Headnote III.C. (Bronco); Dkt. 92 at Headnote I (Johnson); and Dkt. 98 (Becerra); as

7   well as Baass' related motion at Dkt. 94 contesting service of process.  The Rule 12(b)(3)

8   motions alternatively seek dismissal or transfer to the Eastern District.  The order does

9   not reach defendants' motions for discretionary transfer under Title 28 U.S.C. § 1404(a),

10  nor does it reach the several motions to dismiss brought under Rules 12(b)(1) or 12(b)(6).

11                                    **DISCUSSION**

12      Though the majority of defendants reside in Madera County and most of the

13  actions giving rise to plaintiff's claims took place within the geographic boundaries of the

14  Eastern District of California, Trout initiated this lawsuit in this district on a theory that one

15  defendant resides here.  Whether that single defendant was properly served is a matter

16  of dispute, and the court considers it as a threshold issue before addressing whether this

17  case must be dismissed for improper venue.

18  **A.    Insufficient Service of Process**

19      Plaintiff delivered process to now-former Director of DHCS, William Lightbourne, at

20  his home in Santa Cruz County, California, on September 16, 2021.  Dkt. 32.  The current

21  Director of DHCS, Michelle Baass, avers that service was invalid to bring her office into

22  the case.  Though service on a state agency can be accomplished by delivering a copy of

23  the summons and complaint to the chief executive officer or other head of the entity

24  under California law, Baass attests that Lightbourne was no longer the head of DHCS on

25  the day of plaintiff's purported delivery.  Plaintiff disagrees that Lightbourne was no longer

26  head of the agency at the time he was served, and he additionally argues that service on

27  Lightbourne was effective because he still had "ostensible authority" to accept service on

28  behalf of the agency.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**1.      Legal Standard**

Federal Rule of Civil Procedure 12(b)(5) permits a motion to dismiss to be brought for insufficient service of process.  A federal court lacks personal jurisdiction over a defendant if service of process is insufficient.  See Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."  Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).  If the plaintiff is unable to satisfy this burden, the court has the discretion to either dismiss the action or retain the action and quash the service of process.  See Stevens v. Sec. Pac. Nat'l Bank, 538 F.2d 1387, 1389 (9th Cir. 1976).  "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion."  Cotti v. City of San Jose, No. 18-cv-02980-BLF, 2019 WL 2579206, at *5 (N.D. Cal. June 24, 2019) (citation omitted).  A plaintiff must serve a summons and a copy of the complaint in the manner and within the time prescribed.  Fed. R. Civ. P. 4(c)(1).  "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

**2.      Service of a State Official**

Federal rules permit service of process on a state (or its officers in their official capacity) in conformity with forum-state procedures.  Fed. R. Civ. Proc. 4(j)(2).  California Code of Civil Procedure section 416.50 provides that a public agency may be served by delivering a copy of the summons and complaint to the agency's presiding officer.  A gubernatorial appointment of an agency official is effective even before the appointment is confirmed by the State Senate.  Cal. Gov't. Code § 1774.

Review of the timeline is relevant here.  Plaintiff initiated this lawsuit on August 6, 2021, naming Director Lightbourne as a defendant in his official capacity.  Dkt. 1.  Governor Newsom announced the appointment of Baass as the new Director of the agency on September 10, 2021.  Baass Decl. ¶ 2 (Dkt. 94-1 at 2).  Lightbourne's last day at DHCS was September 14, 2021, and Baass assumed all Director responsibilities on

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10

September 15, 2021.  Baass Decl. ¶¶ 3, 4 (Dkt. 94-1 at 2).  The day after Baass officially took over the job, September 16, 2021, plaintiff delivered process to Lightbourne at his home address in Santa Cruz County.  Dkt. 32.  Lightbourne was no longer Director of the agency and did not have actual authority to accept service on behalf of the agency at the time he was served with process.  Though plaintiff argues that Baass did not actually start her position until after September 15, 2021, he ignores the publicly announced effective date of her appointment and the statutorily determined conclusion that she ascended to the role on that date.  Therefore, as a matter of law, plaintiff's delivery of process to Lightbourne was not effective to serve the Director of DHCS—he instead served a recently-retired civilian.

11
12
13
14
15
16
17
18
19
20
21
22

Plaintiff cites to a declaration filed in Pharmacists Association, et al. v. Michelle Baass, 4:19-cv-02999-JSW, another case in this district, in which Baass was substituted for Lightbourne as Director of DHCS.  That declaration stated that Baass' start date as Director was September 21, 2021, and plaintiff argues that she is judicially estopped from taking the different position she asserts here related to her start date.  However, plaintiff's argument falls well short of precluding Baass' declaration in this case because (1) a notice of errata has since been filed in the Pharmacists Association case correcting the start date noted therein (see Case No. 4:19-cv-02999-JSW, Dkt. 112), and (2) plaintiff does not identify any of the factors necessary to trigger exclusion of Baass' position based on judicial estoppel (see Ah Quin v. Cty. of Kauai Dep't of Transp., 733 F.3d 267, 270 (9th Cir. 2013)).  In sum, plaintiff's September 16, 2021, delivery of papers to Lightbourne's residence was not effective service of process on the Director of DHCS.

23

### 3.    Ostensible Authority

24
25
26
27
28

"Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."  Cal. Civ. Code § 2317.  A plaintiff can only establish ostensible authority by satisfying three "essential elements": a "[1] representation by the principal, [2] justifiable reliance thereon by a third person, and [3] change of position or injury resulting from such reliance."  Yanchor v.

1   Kagan, 22 Cal.App.3d 544, 549 (1971); see also Brockmeyer v. May, 383 F.3d 798, 801

2   (9th Cir. 2004) (noting that it is the plaintiff's burden to establish proper service).  When

3   the third party relies on an agent's ostensible authority in good faith and without want of

4   ordinary care, the principal is bound by the acts of its agent.  Cal. Civ. Code § 2334.

5          Plaintiff argues that Lightbourne continued to hold ostensible authority to accept

6   service on behalf of DHCS based on a few representations.  First, DHCS continued to

7   issue form publications with Lightbourne's name listed as the Director on letterhead until

8   October 25, 2021.  Thimesch Decl., Ex. 3 (Dkt. 105-4).  Second, the "About the Director"

9   page on the DHCS website continued to display Lightbourne's photo and biography until

10  at least September 30, 2021.  Thimesch Decl. ¶¶ 11-12 (Dkt. 105-1 at 3).  Plaintiff's

11  counsel notes, however, that Baass' name replaces Lightbourne's as Director at certain

12  places on the DHCS website on September 16, 2021.  Thimesch Decl. ¶ 11 (Dkt. 105-1

13  at 3).  Finally, plaintiff's counsel notes that the Attorney General's office, counsel for

14  Baass and another defendant, did not challenge service on Lightbourne for some 51 days

15  following service despite regular exchanges between counsel acknowledging service.

16  Thimesch Decl., Ex. 4 (Dkt. 105-3).

17         Here, plaintiff's references are less than compelling to establish that DHCS

18  represented that Lightbourne was still its Director and to justify plaintiff's service on him.

19  The first reference, the forms that DHCS continued to distribute with Lightbourne's name

20  on the letterhead, were clearly not directives issued on Lightbourne's behalf.  Plaintiff

21  draws too much from these informational notices—they are not signed by Lightbourne,

22  they do not suggest that Lightbourne directed their distribution, and it is reasonable to

23  infer that his name is only left in the header as a result of inherent administrative delays

24  in bureaucratic transitions.  Regarding the second reference, plaintiff also places too

25  much stock in the "About the Director" biography page of the DHCS website.  Plaintiff's

26  counsel acknowledges that Lightbourne's name was replaced with Baass' at some points

27  on the website beginning at least on September 16, the date of service, even though

28  Lightbourne's biography was not replaced with hers until September 21.  Thimesch Decl.

United States District Court
Northern District of California

1   ¶¶ 11-12.  The inconsistency of the names on the website beginning at least on the date

2   of service weakens plaintiff's inference that the website represented Lightbourne was still

3   Director.  The agency's Twitter announcement of the transition on September 15

4   additionally weakens plaintiff's reference.  See Dkt. 94-1 at 2.  And, as with the

5   letterhead, the delay in posting Baass' biography is easily accepted as a result of

6   inherent administrative delays in bureaucratic transitions.  These two references fall short

7   of the first two elements necessary to support ostensible authority.  DHCS did not

8   represent that Lightbourne was still Director through either of these references, and given

9   the announcements that a new Director had been introduced, reliance on these

10   weakened representations to establish that Lightbourne still had authority was not

11   justified.

12          For the third reference, counsel from the Attorney General's office states to

13   plaintiff's counsel, "I understand that you recently served the head of DHCS.  I represent

14   his office.  Please agree to grant DHCS the same extension granted to DSS for purposes

15   of responding to the complaint."  Thimesch Decl., Ex. 2 (Dkt. 105-3 at 2).  The gendered

16   reference to the Director as well as the acknowledgement that he had already been

17   served may support an inference that Lightbourne had authority to accept service.

18   Though this representation is not from the agency or Lightbourne himself, it is a

19   communication from counsel that may be accepted as a representation from the principal

20   and reasonably relied upon.  However, even if the court accepted these points, plaintiff's

21   argument falls short on the third element of the ostensible authority assessment.  Plaintiff

22   does not show a change in position based on counsel's after-the-fact comments—

23   delivery of process to Lightbourne had already been completed and he took no steps

24   differently based on a representation from the DHCS Director or counsel.  Plaintiff's

25   argument regarding ostensible authority falls short because the representation of counsel

26   took place after plaintiff's delivery of process to Lightbourne.

27          In sum, Baass establishes that Lightbourne did not have actual authority to accept

28   service of process on behalf of the agency on September 16, 2021.  The court finds that

1    Lightbourne did not have ostensible authority to accept service of process on behalf of

2    the agency on that date either.  There was no service effective to give this court

3    jurisdiction over the office of the Director of DHCS, and the agency must be dismissed.

4    **B.    Improper Venue**

5        **1.    Legal Standard**

6        "The district court of a district in which is filed a case laying venue in the wrong

7    division or district shall dismiss, or if it be in the interest of justice, transfer such case to

8    any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  When

9    a defendant files a Rule 12(b)(3) motion to dismiss for improper venue, the burden shifts

10   to the plaintiff to establish that venue is proper.  See Piedmont Label Co. v. Sun Garden

11   Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).  "Analysis under Rule 12(b)(3) . . .

12   permits the district court to consider facts outside of the pleadings."  Argueta v. Banco

13   Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996), overruled on other grounds, Atl. Marine

14   Constr. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 571 U.S. 49 (2013).

15       "When venue is challenged, the court must determine whether the case falls within

16   one of the three categories set out in § 1391(b).  If it does, venue is proper; if it does not,

17   venue is improper, and the case must be dismissed or transferred under § 1406(a)."  Atl.

18   Marine Constr. Co., 571 U.S. at 56.  First, the plaintiff may bring suit in "a judicial district

19   in which any defendant resides, if all defendants are residents of the State in which the

20   district is located."  28 U.S.C. § 1391(b)(1).  Second, the plaintiff may bring suit in "a

21   judicial district in which a substantial part of the events or omissions giving rise to the

22   claim occurred, or a substantial part of property that is the subject of the action is

23   situated."  28 U.S.C. § 1391(b)(2).  Third, if there is not a proper district under the first two

24   provisions, the plaintiff may bring the suit in "any judicial district in which any defendant is

25   subject to the court's personal jurisdiction with respect to such action."  28 U.S.C.

26   § 1391(b)(3).  Residency is determined under Title 28 U.S.C. § 1391(c).

27       Venue is also proper in actions where the defendant is an officer or employee of

28   the United States "in any judicial district in which (A) a defendant in the action resides,

10

1    (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or

2    (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C.

3    § 1391(e)(1).

4        **2.    Analysis**

5        Plaintiff makes clear in his opposition brief that he relies on only one of the three

6    primary grounds for venue, that expressed in Title 28 U.S.C. § 1391(b)(1).  Plaintiff

7    contends that all defendants reside in California, and therefore, venue is proper here in

8    the Northern District based on the personal residence of former DHCS Director

9    Lightbourne in Santa Cruz County.  Plaintiff also argues that HHS funding to Madera

10   County flows through Regional Office 9 in San Francisco, which is also located in this

11   judicial district.  Plaintiff suggests without cite that Secretary Becerra, though named in

12   his official capacity, is a lifelong resident of California.  All of plaintiff's contentions lack

13   merit.

14       **a.    Residences of DHCS Director and HHS Secretary**

15       A state officer sued in his official capacity is not a natural person within the

16   meaning of section 1391(c). Umphress v. Hall, 479 F. Supp. 3d 344, 349 (N.D. Tex. Aug.

17   14, 2020) ("the key difference between a 'natural person' and a state official sued solely

18   in his official capacity is that a lawsuit involving an official-capacity defendant follows the

19   office and not the natural person.").  "Obviously, state officials literally are persons. But a

20   suit against a state official in his or her official capacity is not a suit against the official but

21   rather is a suit against the official's office." Will v. Michigan Dep't of State Police, 491

22   U.S. 58, 71 (1989).  If an official-capacity defendant ceases to hold office, the successor

23   official is substituted as a party defendant, so a venue determination based on a current

24   or past government official's personal residence is improper.  See Karcher v. May, 484

25   U.S. 72, 77 (1987) (affirming that "the public officer's successor is automatically

26   substituted as a party"); Fed. R. Civ. P. 25(d) ("An action does not abate when a public

27   officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold

28   office while the action is pending.  The officer's successor is automatically substituted as

a party.")

For purposes of venue, official-capacity residence is determined under section 1391(c)(2), which applies to entities.  Umphress, 479 F. Supp. 3d at 350; see 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction").  Federal officers are considered to reside where the officers perform their official duties.  See Reuben H. Donnelley Corp. v. F.T.C., 580 F.2d 264, 266 n.3 (7th Cir. 1978) ("The residence of a federal officer has always been determined by the place where he performs his official duties.") (citations omitted). Furthermore, the mere presence of a regional agency office in a judicial district does not create residency in the district for the purpose of venue analysis.  Id. at 267.  Treating official-capacity defendants as representative of their office or state under section 1391(c)(2) fits with "the general rule" that "if a suit is brought against a state official in his official capacity, the official's residence is where he performs his official duties."  See Missouri Electric Cooperatives v. Missouri, 229 F.Supp.3d 888, 891 (E.D. Mo. 2017); see also Venue Based on Residence, Rutter Group, Fed. Civ. Pro. Before Trial Ch. 4-C(f) (citing Berry v. New York Dept. Corr. Servs., 808 F. Supp. 1106, 1108 (S.D.N.Y. 1992)). An official-capacity suit is, in essence, a suit against the agency whose residency for purposes of venue is fixed by the location of its headquarters and offices.

Plaintiff's reliance on the out-of-circuit case Navajo Health Foundation v. Burwell, 86 F. Supp. 3d 1211 (D.N.M. 2015), for the proposition that the personal residence of the head of a federal agency might ever be relevant for purposes of venue in an official capacity suit, is misplaced.  The holding in Navajo Health Foundation (1) ignores the fact that in an official capacity suit a federal official is not sued as a "natural person"; (2) has been criticized as wrongly decided, see Umphress, 479 F. Supp. 3d at 350-51; and (3) in any event conflicts with the consistent line of cases in this Circuit, including cases decided after Congress amended § 1391 in 2012, holding that federal defendants sued in their official capacity reside at the agency's official residence, where the official duties are

1    performed.  See, e.g., Tsi Akim Maidu of Taylorsville Rancheria v. United States, No. 16-

2    cv-07189-LB, 2017 WL 2289203, at *2 (N.D. Cal. May 25, 2017); Al Hada v. Pompeo,

3    No. 18-cv-8002, 2018 WL 6264999, at *2 (C.D. Cal. Sept. 17, 2018); J.P. v. Sessions,

4    No. 18-cv-06081-JAK, 2019 WL 6723686, at *43 (C.D. Cal. Nov. 5, 2019).

5         Plaintiff sued former DHCS Director Lightbourne exclusively in his official capacity.

6    FAC ¶ 32; Dkt. 108 at 1-2.  Plaintiff creatively argues that Lightbourne performed his

7    official duties from his Santa Cruz County residence because he worked from home

8    during the COVID-19 pandemic.  FAC ¶ 9.  Plaintiff fails, however, to offer any authority

9    for this unique position that contradicts prior authority emphasizing that official-capacity

10   residence is established where an officer officially performs his or her duties.  Because

11   DHCS offices—including those of the agency's director—are located in Sacramento

12   County, within the Eastern District of California, that is where DHCS (and its officers sued

13   in their official capacity) resides for purposes of § 1391(c)(2).  On this basis, the court

14   concludes that venue in this district is improper because no defendant resides here.  See

15   28 U.S.C. § 1391(b)(1).  This assessment is only further bolstered by the court's

16   determination above that service on Lightbourne was ineffective.  Without service on

17   Lightbourne at his personal residence in Santa Cruz County, there remains little

18   argument that any defendant resides in the Northern District.

19        Plaintiff similarly sues HHS Secretary Becerra exclusively in his official capacity.

20   FAC ¶ 32.  Plaintiff reasons that federal officers may hold "dual residency" for purposes

21   of venue, citing to a case brought against a Pentagon-based Air Force officer.

22   Dehaemers v. Wynne, 522 F. Supp. 2d 240, 248 (D.D.C. 2007).  However, the residency

23   inquiry in Dehaemers focused only on the location where the officer performed his official

24   duties—either in Washington, D.C., or Arlington, Virginia, the location of the Pentagon—

25   the inquiry did not propose that an officer's residency can be based on their personal

26   residences for an official-capacity suit.  Id. at 248.  Plaintiff suggests without cite that

27   Becerra maintains a personal residence in California, but even so, plaintiff misses the

28   mark.  There is no support for the premise that Becerra performs official duties in

United States District Court
Northern District of California

California.  Because HHS offices—including those of the Secretary—are located within the District of Columbia, that is where HHS (and its officers sued in their official capacity) resides for purposes of § 1391(c)(2).  See Reuben H. Donnelley Corp., 580 F.2d at 266 n.3.  The presence of a regional office in San Francisco does not change the venue analysis because a regional office does not create residency.  On this basis as well, the court concludes that venue in this district is improper because not all defendants reside in California.  See 28 U.S.C. § 1391(b)(1).

**b.      Section 1391(e)**

Special provisions govern venue in civil actions in which the United States is a defendant.  The federal-entity venue provision provides in relevant part:

> A civil action in which a defendant is an officer or employee of the United States or any agency therefor acting in his official capacity . . . or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).

Here, plaintiff brings claims against a federal defendant, Secretary Beccera, in his official role as the head of HHS.  FAC ¶ 32.  Apart from HHS, the other defendants are all located in either Madera County or Sacramento County.  Both Counties are located within the boundaries of the Eastern District of California.  As a result, the Northern District of California is not a proper venue for this lawsuit under § 1391(e)(1)(A) because no defendant resides here.

Similarly, there are no factual allegations that indicate that "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district, so § 1391(e)(1)(B) is also not a basis for proper venue in this court.  All three of the main events giving rise to plaintiff's claims took place in Madera County, including (1) the shooting of Calley, (2) the abuse of the three sons, and (3) the fraudulent transfer of the Chowchilla property.  The events that gave rise to this action occurred within Eastern

14

1   District of California, and this court thus finds that the appropriate venue for this action

2   lies there.  28 U.S.C. § 1391(e)(1)(B).  Though the FAC alleges that some actions

3   occurred here, namely, failures of the federal HHS to supervise the state and local

4   officials occurred in the San Francisco Region 9 office, at the Office of Civil Rights (FAC

5   ¶ 10), the allegations lack any specific connection to that office (see Leoz Decl. ¶¶ 3-4

6   (Dkt. 98-1 at 2)).  The FAC does not meet the necessary showing that a "substantial part

7   of the events or omissions occurred" in this district.

8       Lastly, neither plaintiff nor any of the minors he represents reside in this district

9   (see FAC ¶ 11(a)-(c)), and plaintiff brings a claim for fraudulent conveyance involving the

10  real property held by some of the defendants in Chowchilla, California, which is also in

11  the Eastern District.  These considerations prevent venue in this district under

12  § 1391(e)(1)(C).  Therefore, the special venue rules triggered by the inclusion of a federal

13  defendant additionally preclude venue in this district.

## CONCLUSION

15      For the reasons stated above, including that service on Lightbourne was improper,

16  that no defendant resides in this judicial district, and that venue is ultimately improper in

17  this district, the court DISMISSES the operative complaint.  Dismissal is without prejudice

18  to filing in the proper district court.  The court TERMINATES without reaching the various

19  other motions challenging the pleading, though several appear meritorious.  Plaintiff

20  should take the opportunity before re-filing to assess whether this plethora of claims and

21  defendants are properly joined.

22      **IT IS SO ORDERED.**

23  Dated: May 6, 2022

24                                                          */s/ Phyllis J. Hamilton*_____

25                                                          PHYLLIS J. HAMILTON
                                                            United States District Judge

26  As amended: July 6, 2022

27                                                          */s/ Phyllis J. Hamilton*_____

28                                                          PHYLLIS J. HAMILTON
                                                            United States District Judge

United States District Court
Northern District of California

15